**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DANILO CANOVIC,

Petitioner,

v.

ERNESTO SANTACRUZ, JR., ET AL.,

Respondents.

Case No. 5:26-cv-05016-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On August 31, 2026, Petitioner Danilo Canovic (A# 246-342-607) ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 4-18.) On September 8, 2026, Respondents Ernesto Santacruz, Jr., Los Angeles Field Office Director for Immigration and Customs Enforcement ("ICE"), David J. Venturella, Acting Director of ICE, Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Todd Blanche, Attorney General of the United States, and

Warden of the Adelanto ICE Processing Center (collectively, "Respondents") filed a Response to Petition (the "Answer"). (Dkt. 6.) On September 9, 2026, Petitioner filed a Reply to the Answer (the "Reply"). (Dkt. 8.) On September 14, 2026, Petitioner filed a Notice of Supplemental Authority (the "Notice"). (Dkt. 9.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 10.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Dkt. 1 at 13-14.) Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. (Dkt. 6.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. <u>See</u> C.D. Cal. L.R. 7-12; <u>Carlson v. Landon</u>, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a citizen of Montenegro. (Dkt. 1 at 7.) Before emigrating to the United States, Petitioner served in the armed forces of Montenegro. (<u>Id.</u> at 9.) He began in the Infantry, was selected for the Special Forces, and was later chosen for the Guard of Honor—a posting requiring rigorous background vetting and a flawless disciplinary record. (<u>Id.</u>) From September 2018 through March 2019, Petitioner deployed to Afghanistan with the NATO Resolute Support Mission. (<u>Id.</u> at 10.) Petitioner served as a Guardian Angel, providing close protective security to NATO forces and allied advisors—most of them U.S. citizens—in an active war zone, and was one of only two Montenegrin servicemembers to complete the Guardian Angel qualification course, which certified him to train others. (<u>Id.</u>) Petitioner received a

Certificate of Appreciation, and a Guardian Angel certificate of completion for that service. (Id.)

On June 28, 2022, Petitioner was inspected and admitted at a designated port of entry on a valid B-2 nonimmigrant visitor visa. (Id. at 7.) Petitioner's authorized period of stay ran through December 27, 2022. (Id.) Petitioner has resided continuously in Chicago, Illinois since the day he was admitted, four years and three weeks by the date of his arrest. (Id.) Petitioner holds his apartment lease in his own name and pays the utilities in his own name. (Id.)

Petitioner has one contact with the criminal justice system. (Id. at 10.) On November 26, 2022, Petitioner and his younger sister stopped for gasoline in Park Ridge, Illinois, when a man pulled up, screamed obscenities in his sister's face, threatened her, got out of his car, and jumped repeatedly on the hood of her car. (Id.) Petitioner stepped in to shield his sister and a physical altercation followed. (Id.) A batter complaint was filed against Petitioner and he was ordered to complete 25 hours of community service, which he completed. (Id.) Petitioner served no custodial sentence and the matter has been expunged. (Id.) Petitioner has no other arrests and no other criminal history in the United States or anywhere else. (Id.)

On December 6, 2022, three weeks before his authorized stay expired, Petitioner timely filed an affirmative Form I-589 application for asylum and withholding of removal, which U.S. Citizenship and Immigration Services ("USCIS") receipted. (Id. at 7.) The application remains pending and has not been decided for three years and eight months. (Id.) Petitioner has not been interviewed on the merits. (Id.) Petitioner appeared for his biometrics appointment as scheduled. (Id.) On the basis of his pending application, USCIS granted Petitioner an Employment Authorization Document under category C08, valid April 2, 2025 through April 1, 2030. (Id.) Petitioner has filed federal income tax returns for each year of his residence in the United States. (Id. at 8.)

Since September 2025, Petitioner has worked as a pest control technician for

a Chicago company. (Id.) He works six days a week. (Id.) The owner of the company states that Petitioner requires no supervision, is one of its best technicians, and is requested by clients by name. (Id.) The company has not replaced Petitioner and his holding his position open for him. (Id.)

Petitioner is a member of a Serbian Orthodox parish in Chicago. (Id.) Petitioner attended services regularly, participated in parish life, volunteered when help was needed, and conducted himself honorably throughout. (Id.) Members of that community have submitted sworn declarations attesting to Petitioner's community ties and support. (Id. at 9.) Petitioner's younger sister lives in Chicago and they speak daily. (Id.) Petitioner is in a committed relationship with a partner who lives in Los Angeles. (Id.)

On July 22, 2026, Petitioner was approached by immigration authorities at the airport. (Id. at 11.) Petitioner was taken into custody without prior notice or a pre-deprivation hearing. (Id. at 12-13.) Petitioner was ultimately transported to the Adelanto ICE Processing Center, where he remains detained. (Id.) Since being detained at the Adelanto ICE Processing Center, Petitioner has become ill and requested medical attention, but medical staff did not perform any meaningful diagnostic testing and told him to rest and drink water. (Id. at 15.) Medical staff provided only allergy pills. (Id.) Petitioner states that the food is insufficient in quality and quantity, and therefore he supplements the food from the commissary and reaches the $100 weekly spending limit every week. (Id. at 16.) COVID-19 is currently spreading in Petitioner's housing unit and visitation has been suspended as a result. (Id.) Petitioner has lost a noticeable amount of weight since being detained. (Id.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count One) is that his detention without

notice of a pre-deprivation hearing violated his procedural due process rights. (Dkt. 1 at 18-26.) Petitioner's second claim for relief (Count Two) is that his detention without a finding of necessity and under conditions which obstruct his right to counsel violate his substantive due process rights. (Id. at 27-32.) Petitioner's third claim for relief (Count Three) is that his warrantless arrest and detention violate 8 U.S.C. § 1357(a)(2) and 8 U.S.C. § 1226(a). (Id. at 32-34.) Petitioner seeks immediate release from custody subject only to the conditions of release that existed before his July 22, 2026 arrest. (Id. at 37.) Petitioner further seeks a limited permanent injunction barring Respondents from re-detaining Petitioner under 8 U.S.C. § 1226 without providing at least seven days' advance written notice and a pre-deprivation bond hearing before an immigration judge at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure his future appearance or the safety of the community, and requiring that the immigration judge conduct an individualized assessment of Petitioner's suitability for bond under that standard. (Id.) Finally, Petitioner seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id. at 38.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United

States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that

infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, it is undisputed that Petitioner lawfully entered the United States on June 28, 2022, and then timely applied for asylum and withholding of removal before his authorized period of stay expired. (Dkt. 1 at 7.) It is further undisputed that Petitioner's application for asylum and withholding of removal remains pending and that based on this pending application, USCIS granted Petitioner an Employment Authorization Document that is valid through April 1, 2030.[1] (Id.) Petitioner also has strong ties to the community and no criminal record

---

[1] The fact that Petitioner was granted employment authorization necessarily means that Petitioner's asylum application was neither frivolous nor abandoned. See 8 C.F.R. § 208.7. It is also undisputed that Petitioner filed federal income tax returns each year of his residence in the United States. (Dkt. 1 at 8.) Thus, the (cont'd . . .)

other than the single battery complaint in 2022 that has been expunged. (Id. at 8-10.) Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on his pending asylum application, approved employment authorization, length of time he lived in the United States, and the ties he built to the community over the past four years. See, e.g., Gagik T. v. Chestnut, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("Judges of this district and others have repeatedly held, on facts materially similar to these, that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process."); Kharitonova v. Albarran, 2026 WL 531441 at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). This "liberty is

---

United States was aware that Petitioner was present in the United States, working pursuant to employment authorization from USCIS, and paying taxes. (Id.) This creates a significant reliance interest in Petitioner's ability to remain out of custody and continue working.

valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner's arrest on July 22, 2026, without prior notice or a pre-deprivation hearing violated Petitioner's procedural due process rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given this violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The fact that Petitioner could receive a post-deprivation bond hearing would not remedy the violation of Petitioner's procedural due process rights. (Dkt. 6 at 1-2); see, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[2] See, e.g., Ixchop Perez v.

---

[2] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because Petitioner has no criminal history other than a single incident that has since been (cont'd . . .)

McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547

---

expunged, an employment authorization, and strong community ties. (Dkt. 1 at 7-10.) Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained in violation of his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[3]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the EAJA. (Dkt. 1 at 38.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable

[3] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.
## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Danilo Canovic (A# 246-342-607) ("Petitioner") from custody (subject only to conditions that were in place prior to his July 22, 2026 detention, if any) and return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: September 16, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE